UNITED STATES BANKRUPTCY COURT
FOR THE
DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~

In re                                                                                      Chapter 13
**ANTHONY R. STEWART**,                                          Case No. 08-15643-JNF
          Debtor
~~~~~~~~~~~~~~~~~~~~~~~~~

# MEMORANDUM

## I. INTRODUCTION

The matter before the Court is the motion filed by the Debtor, Anthony R. Stewart ("Stewart" or the "Debtor"), who is appearing in this case *pro se,* through which he seeks damages against creditors, whom he identified as "Verizon" and "Allied Interstate," for their willful violations of the automatic stay (the "Motion"). The Court conducted a hearing on the Motion on January 14, 2010. At the hearing, the Debtor made unrebutted offers of proof. Neither creditor filed a response to the Motion nor appeared at the hearing, despite adequate notice and opportunity to be heard. Following the hearing, the Court directed the Debtor to submit any additional documentation he had in support of his Motion. On January 25, 2010, the Debtor filed "Debtor's Memorandum and Documents in Support of Debtor's Motion for Contempt for Violation of the Automatic Stay Pursuant to 11 U.S.C. Sec. 362(k)" (the "Memorandum") together with a certificate of service reflecting that he served the Memorandum on Verizon and Allied Interstate. Neither creditor filed a response to the Memorandum.

Upon consideration of the documentary and testimonial evidence introduced by the Debtor and the entire record of proceedings in this case, the Court now makes the following findings of fact and conclusions of law pursuant to Fed. R. Bankr. P. 7052.[1] For the reasons stated below, the Court shall enter an order granting the Motion, as supplemented by the Memorandum, and issue a judgment awarding the Debtor $1,000 in actual damages and $24,000 in punitive damages against Verizon and its agents, jointly and severally, for their willful and repeated violations of the automatic stay pursuant to 11 U.S.C. § 362(k).

**II. FACTS**

The Debtor filed, *pro se*, a voluntary petition under Chapter 13 of the Bankruptcy Code on July 31, 2008, together with a creditor matrix in which he listed the creditors set forth in the following table:

---

[1] *See* In re Hyde, 334 B.R. 506, 509 (Bankr. D. Mass. 2005)(the court may take judicial notice of its records in a case).

| **CREDITOR NAME** |
|---|
| AFNI, INC.<br>404 Brock Dr.<br>Bloomington, IL 61702<br>**Acct# XX2420**<br>Amt. Due: $70 |
| Allied Interstate<br>300 Corporate Exchange Dr. 5th Flr.<br>Columbus, OH 43231<br>Re: Public Storage, Inc.<br>**Acct.# XXXX9449 (B012)**<br>Amt. Due: $292.02 |
| Verizon<br>P.O. Box 1<br>Worcester, MA 01654-0001<br>**Acct# XXXXXX86220680086**<br>Amt. Due: $453.46 |
| Verizon<br>P.O. Box 1<br>Worcester, MA 01654<br>**Acct#XXXXXX17000010080**<br>Amt. $325.56 |
| Verizon New England<br>236 E. Town Street<br>Columbus, OH 43215<br>**Acct# XXXXXX3006**<br>Amt. Due: $1,331.00 |

On August 29, 2008, the Debtor filed his Schedule F - Creditors Holding Unsecured Nonpriority Claims, in which he provided information nearly identical to that provided on his matrix regarding the claims of Verizon, Verizon New England, Afni and Allied Interstate, as follows:

| CREDITOR NAME | AMOUNT OF CLAIM |
|---|---|
| Afni, Inc.<br>404 Brock Dr.<br>Bloomington, IL 61702<br>**Acct# XX2420** | $70.00 |
| Public Storage<br>Allied Interstate<br>300 Corporate Exchange Dr. 5th Flr.<br>Columbus, OH 43231<br>**Acct.# XXXX9449** | $292.02 |
| Verizon<br>P.O. Box 1<br>Worcester, MA 01654-0001<br>**Acct# XXXXXX86220680086** | $455.00 |
| Verizon<br>P.O. Box 1<br>Worcester, MA 01654-0001<br>**Acct# [left blank]** | $326.00 |
| Verizon New England<br>236 E. Town Street<br>Columbus, OH 43215<br>**Acct# XXXXXX3006** | $1,331.00 |

On November 17, 2008, Verizon timely filed proof of claim number 12-1, asserting an unsecured nonpriority claim in the amount of $5,526.21, thereby establishing that it received notice of the Debtor's Chapter 13 case. On the face of the claim form, Verizon referenced four account numbers all beginning with "617," a Boston area code.[2] Despite

---

[2] None of these account numbers correspond to those provided by the Debtor in his matrix or Schedule F.

instructions on the claim form to include only the last four digits of the account number, Verizon included the Debtor's entire account numbers for each account and also disclosed six of the Debtor's complete phone numbers in the supporting documentation attached to the claim. Verizon listed its notice address in the proof of claim as: "AFNI/Verizon East, PO Box 3037, Bloomington, IL 61702-3037." To support its proof of claim, Verizon attached seven pages of "Account Profiles" containing additional account information for the Debtor, including profiles for account number XXXXXX3006733 - 067 with a "Final Bill Amount" of $1,331.25.

A review of the claims register in this case reveals that neither Allied Interstate nor Public Storage, which the Debtor listed on Schedule F, has filed a proof of claim, and the deadline for doing so expired on December 9, 2008. On December 11, 2008, the Court confirmed the Debtor's Amended Chapter 13 Plan which provided for a minimum dividend to unsecured creditors of 0.65%.

On December 17, 2009, the Debtor filed the Motion which he titled "Violation of the Automatic Stay." Through his pleading, he sought damages in the amount of $5,000 each from Verizon and Allied Interstate for their willful violations of the automatic stay because, he alleged, "[these] creditors continue to harass and call, and send collection notices to the debtor on a weekly and monthly bases [sic]," despite notice of the bankruptcy filing delivered by him to them by facsimile and mail. The Debtor served the Motion on Allied Interstate and Verizon New England at the addresses set forth in his matrix. On December 22, 2009, the Court entered an order treating the Motion as one for contempt for violation

5

of the automatic stay pursuant to 11 U.S.C. § 362(k) and scheduled a hearing on the Motion for January 14, 2010. On January 7, 2010, the Debtor filed a certificate of service indicating that he served the notice of the hearing on Verizon New England and Allied Interstate by first class mail at the same addresses.

At the hearing, the Debtor was duly sworn. He testified that Allied Interstate is a collection agency working on behalf of Verizon and that both have been contacting him at home since the petition date, through collection letters and calls made, "at least two [or] three times a week." Tr. at 4 and 11. He said that he has repeatedly sent both creditors by facsimile transmission copies of his bankruptcy petition and case number, but that communications from them have persisted. Id. at 4-5. The Debtor, who works from his home as a self-employed insurance agent, testified that he receives calls throughout the day from the creditors and that he always informs them that he is a debtor in bankruptcy and that he has previously notified them of his case. Id. at 12. He said a typical response from the creditors has been "Well, we never got your letter. You need to have your attorney give us a call." Id. at 12, *see also* Id. at 16-17. He speculated that the creditors have violated the automatic stay because of his status as a *pro se* debtor. Id. The Chapter 13 Trustee, who attended the hearing, confirmed that her office sent a small payment to Verizon pursuant to the Debtor's confirmed Chapter 13 plan but that the check had not been cashed. Id. at 9.

The Debtor produced four letters at the hearing which were mailed to him, two

each from Allied Interstate, Inc.[3] and Afni, Inc.,[4] and introduced them into evidence. The Allied Interstate letters, dated December 2, 2009 and January 5, 2010, respectively, each were addressed to "Anthony Stewart Dip"and each contained the same return address as listed by the Debtor in his matrix. The December letter referenced one of the same account numbers provided by the Debtor on his matrix, Account Number XXXXXX1700,[5] and provided, in part:

> VERIZON has placed your account with Allied Interstate to recover the above referenced Amount Due [$667.86]. To avoid further collection efforts, please contact us at the number listed below to make arrangements for payment or remit the balance of the Amount Due to the address provided on the remittance coupon below.

*See* Exhibit 1. The January letter, which referenced the same account number as the December letter, provided, in part:

> VERIZON has placed your account with Allied Interstate to recover the above referenced Amount Due [$667.86] and has agreed to accept one single payment of $467.50 as settlement on this account. To ensure proper credit, please make all payments payable to Allied Interstate, Inc. or VERIZON.

Id.

---

[3] The return address set forth on both of the Allied Interstate letters was: "3000 Corporate Exchange Drive, Columbus, OH 43231," the same address used by the Debtor on his matrix and Schedule F. The letters also contained a payment and correspondence address of: "P.O. Box 361623, Columbus, OH 43236-1623."

[4] The return address set forth on both of the Afni, Inc. letters was: "404 Brock Drive, P.O. Box 3427, Bloomington, IL 61702-3427" the same address used by the Debtor in his matrix and Schedule F, but for the omission of the post office box.

[5] The first ten digits of this account number were provided by the Debtor on his matrix with respect to Verizon.

The Afni collection letters, dated November 6, 2009 and January 7, 2010, respectively, both reflect that Afni was a debt collector for Verizon New England Inc. The letters referenced phone number (XXX) XXX-3006, which was listed as an account number by the Debtor on both his matrix and Schedule F and was referenced by Verizon in its proof of claim. Through its letters, Afni sought payment of an overdue balance in the amount of $1,331.25. Each letter contained large type banners reading "SETTLEMENT OFFER" and provided, in pertinent part, the following:

> Pay half of your balance due. We are making an attempt to contact you regarding your overdue account. In an effort to resolve this matter we will accept $665.63, half of the current amount due. . . .This is an attempt to collect a debt. . . .This letter is from a debt collector.

Id.

The Debtor testified at the hearing that the creditors' postpetition collection efforts have caused him emotional distress and that he has lost time at work in dealing with the creditors' collection attempts. Tr. at 16. Following direct questioning by the Court, he requested that the Court assess damages against the creditors in the amount of $20,000 each, a $15,000 increase from his initial request of $5,000. Id. at 16. The Court took the matter under advisement and granted the Debtor an opportunity to file additional documentation to support the Motion. The Debtor filed the Memorandum on January 25, 2010, which he signed under the penalties of perjury, alleging that Verizon and Allied Interstate knowingly and intentionally violated the automatic stay and seeking an award of actual and punitive damages against them in the amount of $25,000 each pursuant to 11 U.S.C. § 362(k) for his mental anguish, depression and loss of sleep.

The Debtor attached to the Memorandum copies of his personal and business phone records on which he highlighted collection calls he received from Verizon and Allied Interstate during October, November and December of 2009 and January of 2010. In all, he highlighted sixteen calls he received. He also attached four letters from Allied Interstate.[6] The first letter was undated and referenced a Verizon account number of XXXXXX17005684084, the first ten digits of which appeared on the Debtor's matrix, and a balance due of $667.86. The letter provided: "This is an attempt to collect a debt." The other two letters were dated September 30, 2009 and December 3, 2009, respectively, and both referenced account number XXXXXX8622068086, which the Debtor listed in both his matrix and Schedule F. The letters were nearly identical to the December 2, 2009 letter from Allied Interstate provided by the Debtor at the hearing, but for a different account number and amount due. Lastly, he attached a letter from Afni, Inc., dated August 8, 2009, referencing the Debtor's disconnected phone number XXX-XXX-3006, a number provided by the Debtor in his matrix and Schedule F and by Verizon in its proof of claim. Through the letter, which contained a banner in large type font which read "COLLECTION NOTICE," Afni sought an amount due from the Debtor of $1,331.25.

## III. DISCUSSION

When a debtor files bankruptcy, he is immediately protected by an automatic stay which prohibits, among other things, "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. . . ." 11 U.S.C. § 362(a)(6). The

---

[6] One of the letters was a duplicate.

9

automatic stay imposes on nondebtor parties an affirmative duty of compliance. Sternberg v. Johnston, 595 F.3d 937, 943 (9th Cir. 2010). Section 362(k) of the Code provides individuals, such as the Debtor in this case, with a vehicle to redress violations of the stay. It provides:

> (1) Except as provided in paragraph (2), an individual injured by a willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.
>
> (2) If such violation is based on an action taken by an entity in the good faith belief that subsection (h) applies to the debtor, the recovery under paragraph (1) of this subsection against such entity shall be limited to actual damages.

11 U.S.C. § 362(k).

"A debtor alleging a violation of the automatic stay has the burden to demonstrate, by a preponderance of the evidence, that a violation of the automatic stay has occurred, that the violation was willfully committed by the respondent, and that the debtor suffered damage as a result of the violation." In re Panek, 402 B.R. 71, 76 (Bankr. D. Mass. 2009)(citing In re Steenstra, 280 B.R. 560, 566 (Bankr. D. Mass. 2002);Adams v. Hartconn Assoc., Inc. (In re Adams), 212 B.R. 703, 708 (Bankr. D. Mass.1997); and In re Dunn, 202 B.R. 530, 531 (Bankr.D.N.H.1996)). "A willful violation does not require a specific intent to violate the automatic stay. The standard for a willful violation of the automatic stay under [§ 362(k)(1) ] is met if there is knowledge of the stay and the defendant intended the actions which constituted the violation." Fleet Mortgage Group, Inc. v. Kaneb (In re Kaneb), 196 F.3d 265, 269 (1st Cir.1999).

As a threshold matter, the Court notes that there are four potential violators of the automatic stay in this case: Verizon, Verizon New England, Allied Interstate and Afni. The Debtor has sought relief against two of them, Verizon and Allied Interstate. Based upon the collection letters submitted by the Debtor, the Court finds that Allied Interstate acted as the agent of Verizon and Afni acted as the agent of Verizon New England. The Court finds an agency relationship existed between Verizon and Afni because Verizon listed Afni in the notice address section of its proof of claim. A nexus also exists between Verizon and Verizon New England because, in addition to sharing the same first name, Verizon included the phone number XXX-XXX-3006 in the supporting documentation attached to its proof of claim which is the same account number listed by the Debtor on both his matrix and Schedule F for a debt owed to Verizon New England. Accordingly, the Court shall treat Verizon and Verizon New England [Inc.] as one and the same for purposes of the Motion and shall treat Allied Interstate and Afni, [Inc.] as agents of Verizon.

The Court finds that the Debtor has sustained his burden of proving willful violations of the automatic stay. First, he has established that Verizon, through its agents Allied Interstate and Afni, committed multiple violations of the automatic stay, specifically 11 U.S.C. § 362(a)(6), by attempting to collect and recover claims against him that arose before the commencement of the case. The Debtor produced three postpetition letters from Afni, two of which provided on their face "This is an attempt to collect a debt[,]"and one of which was labeled "COLLECTION NOTICE." These letters all related to an account for phone number XXX-XXX-3006 and sought an amount owed of $1,331.25. This

11

account/phone number and balance due appears in the Debtor's matrix and Schedule F as well as in the supporting documentation for Verizon's proof of claim. The Debtor also produced five letters from Allied Interstate, three of which referenced account number XXXXXX1700568084, the first ten digits of which were provided on the Debtor's matrix, and two of which referenced account number XXXXXX8622068086, which appeared on the Debtor's matrix and Schedule F. All of these letters provided "[w]e are a debt collector attempting to collect a debt" or "[t]his is an attempt to collect a debt[.]" The collection letters all constitute acts to collect or recover debts from the Debtor which arose before the commencement of his case. The letters unequivocally establish the blatant breach by Verizon and its agents of their affirmative duties to conform their conduct to the automatic stay once the Debtor filed for bankruptcy. *See* Sternberg, 595 F.3d at 944.

Second, the Debtor has established that Verizon and its agents all had knowledge of the stay and intended the actions which constituted the violations. There can be no dispute that the creditors intended to send the collection letters after the petition date and the imposition of the automatic stay. Similarly, there is no question that the Debtor listed Verizon, Verizon New England, Afni and Allied Interstate on his matrix and all are presumed to have received notice of the Debtor's bankruptcy filing. Indeed, Verizon/Afni filed a proof of claim in this case and would only have done so following receipt of notice of the filing. Additionally, the Allied Interstate and Afni letters all contain the same return address provided by the Debtor in his matrix but for the Debtor's omission of a post office box with respect to Afni. The Allied Interstate letters dated December 2, 2009 and January

5, 2010 were addressed to Anthony Stewart "Dip," an acronym which, in common bankruptcy parlance, is a reference to a debtor in possession, typically a Chapter 11 debtor. Finally, the Debtor provided unrebutted testimony that he informed Verizon's agents of his status as a Chapter 13 debtor when he received collection calls. Accordingly, the Court finds that the creditors' violations of the automatic stay were willful.

Third, the Court finds that the Debtor has established that he has suffered damages as a result of the creditors' violations of the stay. At the hearing, he provided unrebutted testimony under oath that he has suffered actual damages in the form of lost time from work and emotional distress. In his Memorandum, which was also sworn and unopposed, he attested that he has suffered mental anguish, depression and sleepless nights as a result of the actions of Verizon and Allied Interstate and sought actual and punitive damages against them in the amount of $25,000 from each. Although the Debtor did not quantify any lost business revenue or fully elaborate on the extent of his actual injuries, the Court accepts the Debtor's averments as true because they were made under oath and were uncontested. The Debtor served the Motion, the notice of the January 14, 2010 nonevidentiary hearing and the Memorandum on Verizon New England and Allied Interstate. Both had the opportunity to cross examine the Debtor and present their own witnesses to rebut his evidence. They failed to do so at their peril.

Based upon the foregoing, the Court awards the Debtor $1,000 against Verizon and its agents, Allied Interstate and Afni, jointly and severally, for actual damages, including emotional distress. *See* Fleet Mortgage Group, Inc. v. Kaneb (In re Kaneb), 196 F.3d 265, 270

13

(1st Cir.1999)("An honest accounting of actual damages under § 362(h) must include the psychological suffering of [the debtor.]"); Holden v. IRS ( In re Holden ), 226 B.R. 809, 812 (Bankr.D.Vt.1998)("Emotional distress is an actual injury. . . . Legitimate human emotions are brought to bear when one's rights are trampled on.").

Additionally, the Court finds that the facts of this case constitute "appropriate circumstances" under § 362(k) to warrant the imposition of punitive damages. An award of punitive damages is within the discretion of the Bankruptcy Court and is a fact specific determination. In re Rosa, 313 B.R. 1, 8 (Bankr. D. Mass. 2004). *See also* Heghmann v. Hafiani (In re Heghmann), 316 B.R. 395, 405-06 (B.A.P. 1st Cir. 2004)("Although the case law is far from uniform with respect to when and under what circumstances punitive damages are awarded, courts often limit the imposition of punitive damages to cases where there is "'egregious, intentional misconduct.'")(citing Lovett v. Honeywell, Inc., 930 F.2d 625, 628 (8th Cir.1991)(quoting United States v. Ketelsen (In re Ketelsen), 880 F.2d 990, 993 (8th Cir.1989)). As discussed by the First Circuit Bankruptcy Appellate Panel in Varela v. Ocasio (In re Ocasio), 272 B.R. 815, 825-26 (B.A.P. 1st Cir. 2002), other factors to be considered in awarding punitive damages include "the nature of the creditor's conduct, the nature and extent of harm to the debtor, the creditor's ability to pay damages, the level of sophistication of the creditor, the creditor's motives, and any provocation by the debtor." Id. (quoting In re Shade, 261 B.R. 213, 216 (Bankr. C.D. Ill. 2001)(citations omitted)).

The Debtor produced eight collection letters from Verizon's agents as well as evidence of sixteen collection calls made by them for a total of twenty-four postpetition

14

communications. The Court finds that the actions of Verizon and its agents, Allied Interstate and Afni, constitute egregious, intentional misconduct due to the number of postpetition communications sent to the Debtor, his repeated attempts to advise them of his bankruptcy filing, their brazen disregard for the automatic stay which was likely precipitated by Stewart's status as a *pro se* debtor and the physical and mental harm suffered by him as a result. Indeed, Verizon has previously demonstrated an indifference to the Debtor's rights through its violation of Federal Bankruptcy Rule 9037[7] when it failed to redact his financial account information from its proof of claim.

The conduct exhibited by Verizon, a sophisticated creditor, through its agents in this case must be met with an award of punitive damages in an amount sufficient to serve the purpose of deterrence. Curtis v. LaSalle Nat'l Bank (In re Curtis), 322 B.R. 470, 487 (Bankr. D. Mass. 2005). Accordingly, the Court awards the Debtor the sum of $1,000 in punitive damages against Verizon and its agents, Allied Interstate and Afni, for each written (eight) and telephonic communication (sixteen) made by them and substantiated by the Debtor

---

[7] The Rule, in part, provides:

(a) Redacted Filings

Unless the court orders otherwise, in an electronic or paper filing made with the court that contains an individual's . . . financial-account number, a party or nonparty making the filing may include only:

. . . (4) the last four digits of the financial-account number.

Fed. R. Bankr. P. 9037.

15

at the hearing and in the Memorandum, for a total of $24,000. The Court will not assess separate damages against Verizon New England because, as discussed above, the Court is treating Verizon and Verizon of New England as one and the same for purposes of the Motion.

For the reasons set forth above, the Court shall enter an order granting the Motion, as supplemented by the Memorandum, and enter a judgment in favor of the Debtor and against Verizon and its agents, Allied Interstate [Inc.] and Afni [Inc.] in the amount of $1,000 in actual damages and $24,000 in punitive damages, for which all parties shall be jointly and severally liable.[8]

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

Dated: April 9, 2010

cc: Anthony R. Stewart, Carolyn Bankowski, Esq., Chapter 13 Trustee, Verizon, Verizon New England Inc., Allied Interstate, Afni.

---

[8] Although the Debtor did not seek damages from Afni in the Motion or the Memorandum, the Court shall construe the requests made therein to conform to the evidence he submitted which includes the collection letters sent by Afni.